PUTNEY v GIBSON

Docket No. 78-2681. Submitted June 15, 1979, at Lansing.—Decided
    August 24, 1979.

Stanley M. Putney was killed when the motorcycle which he was
    driving was struck by an automobile driven by Paul S. Gibson.
    Loretta J. Putney, individually and as administratrix of the
    decedent's estate, and others commenced an action with the
    counts against Paul Gibson and Judith M. Gibson sounding in
    negligence and the counts against Charles Good, d/b/a Hoover
    Corner Bar, and Allen and Sharol Haskins, d/b/a Melody Bar
    being brought under the dramshop act. On the first day of trial,
    prior to the empaneling of the jury, plaintiffs settled with
    defendant Good, d/b/a Hoover Corner Bar, for $8,000, giving in
    exchange a convenant not to sue. On the second day of trial,
    plaintiffs informed the trial court that they had settled with
    the Gibsons for $40,000 in exchange for plaintiffs' convenant
    not to sue. The Saginaw Circuit Court, Eugene Snow Huff, J.,
    determined that the Gibsons should be retained as parties
    defendant throughout the trial and that the Gibsons' attorney
    should do what he considered to be appropriate without at-
    tempting to hurt or help either side. While the Gibsons' attor-
    ney examined several witnesses, he neither participated in the
    examination of Paul Gibson nor presented any proofs on behalf
    of the Gibsons. Upon conclusion of proofs, the Gibsons' attorney
    requested that the jury be informed that the Gibsons were no
    longer interested parties in the suit. The attorney for the
    Haskins, d/b/a Melody Bar, requested that the participation of
    the Gibsons be continued through the closing arguments and
    the jury deliberation. The trial court, finding that there was no
    collusion between the plaintiffs and the Gibsons and that
    continued trial participation would discourage future settle-
    ments in similar cases, ruled that he would inform the jury of
    the fact that the Gibsons were no longer parties to the suit.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 45 Am Jur 2d, Intoxicating Liquors §§ 561, 562, 590.
[3] 45 Am Jur 2d, Intoxicating Liquors § 612.
    Right of one liable under Civil Damage Act to contribution or
    indemnity from intoxicated person, or vice versa. 31 ALR 3d 438.

Melody Bar moved to dismiss plaintiffs' suit against it. The motion to dismiss was denied. Prior to closing arguments, the trial court informed the jury that it need not concern itself with plaintiffs' suit against the Gibsons. The jury returned a verdict in favor of the plaintiffs of $25,000.

Defendant Melody Bar proposed that the judgment should set off against the jury's verdict both the $8,000 Hoover Corner Bar settlement and the $40,000 Gibson settlement. The trial court permitted the $8,000 Hoover Corner Bar settlement to be set off against the jury's verdict, but refused to set off the $40,000 Gibson settlement against the jury's verdict. A judgment was entered consistent with that determination, Eugene Snow Huff, J. Defendant Melody Bar appeals, urging error on the part of the trial court by reason of the court's denial of the motion to dismiss which was made after plaintiffs failed to name and retain Paul Gibson as a defendant throughout the trial and by reason of the court's denial of the setoff of the Gibson settlement against the jury's verdict. *Held:*

1. Since the dramshop act is remedial in nature, the "name and retain" provision of that act will be construed liberally so as to give effect to the purpose of that provision; that being, to eliminate the common practice of collusive acts in a dramshop action by the plaintiff and the intoxicated person following a token settlement between those parties. The trial court properly denied defendant Melody Bar's motion to dismiss, since the settlement between plaintiffs and defendants Gibson did not violate the name and retain provision, that settlement being clearly not collusive, not for a mere token sum and without detriment to the interests of defendant Melody Bar.

2. Since a dramshop defendant cannot seek contribution from an intoxicated tortfeasor, defendant Melody Bar cannot assert a right to set off against the verdict in the dramshop action the amount of the settlement between the plaintiffs and the Gibsons, for to permit such a setoff would allow the dramshop defendant to secure indirectly that which could not be secured directly.

Affirmed.

1. INTOXICATING LIQUORS — DRAMSHOP ACT — NAME AND RETAIN — STATUTORY CONSTRUCTION — PURPOSE OF THE ACT.

The dramshop act, being remedial in nature, should be liberally construed; thus, the "name and retain" provision of the dramshop act should be construed to give effect to the legislative purpose for that provision, that being to eliminate the common practice of collusive acts by the plaintiff and the intoxicated

person whereby the intoxicated person enters into a settlement with the plaintiff for a token sum and thereafter energetically assists the plaintiff with the prosecution of a suit against the tavern owner (MCL 436.22; MSA 18.993).

2. INTOXICATING LIQUORS — DRAMSHOP ACT — NAME AND RETAIN — PURPOSE OF THE ACT.

The purpose of the "name and retain" provision of the dramshop act is satisfied, even though the trial court permits termination by settlement of a plaintiff's action against the intoxicated person prior to the end of trial of a dramshop action, where the trial court determines that the settlement with the intoxicated person was not for a token sum, there was no collusion between the plaintiff and the intoxicated person and the dramshop defendant suffered no detriment by the termination of the action against the intoxicated person (MCL 436.22; MSA 18.993).

3. INTOXICATING LIQUORS — DRAMSHOP ACT — DAMAGES — SETTLE- MENT OF INTOXICATED PERSON — SETOFF BY DRAMSHOP DEFEN- DANT.

A dramshop defendant cannot seek contribution from the intoxi- cated defendant; therefore, a dramshop defendant cannot assert a right to set off against the verdict in a dramshop action the amount of the settlement between the plaintff and the intoxi- cated tortfeasor, for to permit such a setoff would allow the dramshop to indirectly secure contribution from the intoxicated tortfeasor.

*Cicinelli, Mossner, Majoros & Alexander, P.C.* (by *Eugene D. Mossner* and *William S. Pearson),* for plaintiffs.

*Smith & Brooker, P.C.* (by *A. T. Lippert, Jr.,* and *Thomas A. Connelly),* for defendants.

Before: ALLEN, P.J., and T. M. BURNS and D. E. HOLBROOK,* JJ.

PER CURIAM. This case involves an action brought under the Michigan dramshop act, MCL

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

436.22; MSA 18.993, which arose out of a fatal car-motorcycle collision. Decedent, Stanley M. Putney, was killed on October 2, 1973, when the motorcycle he was driving was struck from the rear by an automobile driven by Paul S. Gibson.

On April 5, 1974, plaintiffs commenced the instant suit alleging that the negligent actions of defendants Paul S. Gibson and Judith M. Gibson, who, respectively, were the driver and the owner of the automobile involved in the accident, had been a proximate cause of the death of Stanley M. Putney. Plaintiffs also alleged in this same suit that the defendant taverns, the Melody Bar and the Hoover Corner Bar, and their respective owners, had sold or furnished alcoholic beverages to defendant Paul S. Gibson while he was visibly impaired in violation of the Michigan dramshop act. On the first day of trial, December 6, 1977, prior to selection of the jury, counsel for plaintiffs announced that the action against Charles Good, d/b/a Hoover Corner Bar, had been settled by these parties. Under the terms of the settlement Good was to pay plaintiffs $8,000 in exchange for a covenant not to sue. Counsel for plaintiffs made clear on the record that the settlement involved only Good and that plaintiffs had reserved their rights against all other defendants. Following this, the jury was impaneled, the remaining parties made their opening statements and plaintiffs called their first witness.

On the morning of the second day of trial, December 7, 1977, counsel for plaintiffs informed the court that plaintiffs' suit against defendants Paul S. and Judith M. Gibson had been settled for $40,000 in exchange for a covenant not to sue.

Following the announcement of this second settlement, counsel for the defendant Melody Bar and

its owners inquired of the court as to how trial should proceed in light of the requirement of the dramshop act that a plaintiff in a dramshop action name and retain throughout trial as a defendant the alleged intoxicated person. MCL 436.22, MSA 18.993. Following this query as to how trial should proceed, counsel for plaintiffs and counsel for defendant Melody Bar engaged in the following exchange:

"MR. CICINELLI: *[Attorney for plaintiffs]* I don't see how Mr. Lippert's client could be hurt because this case is separate and apart from the interests of the Gibsons; totally divorced from it. But if he wants to we would agree, if he doesn't want to retain and proceed as that Buckton case states, we would agree that we could proceed as we used to before that legislature, that legislation was passed in name and retain legislation, and just given—have the defendants out of the case as of now and let the jury be informed of that. And they could deduct any sum received by way of settlement if they should render a verdict against the Haskins and Melody Bar.

"MR. LIPPERT: *[Attorney for Melody Bar]* We would be willing to do that. I was close to that. And, in fact, Judge, he put his finger on what I suggested and that was that we retain them, and Mrs. Gibson, to the point of calling Mr. Gibson as one of the next witnesses. I don't know what Mr. Cicinelli's order of proofs are, but perhaps as a next witness following this that the jury be instructed that that part of the case has been concluded but without any remarks as to what conclusion was reached. I don't think that is any concern of the jury, that's a judicial matter, a judicial matter only. We then continue with the case against the bar only. And we bring it as a Dram Shop case.

"But I think before we do that Mr. Gibson's testimony ought to be put on the record and treated as a defendant within the scope of that name and retained provision. Following this we just continue with the bar case. And if the jury returns a verdict in favor of the

plaintiffs individually here, then the amount of settle-
ment will be deducted by the Court."

Subsequently, the trial judge determined that
the Gibsons should be retained as parties defen-
dant throughout trial and he instructed their at-
torney to "do what you consider appropriate with-
out attempting to hurt or help either side".

The trial proceeded with the presence of counsel
for the Gibsons. Although the examined several
witnesses, he did not participate in the examina-
tion of defendant Paul Gibson nor did he present
any proofs on behalf of the Gibsons.

At the conclusion of the proofs, but prior to the
trial court's instructions to the jury, counsel for
the Gibsons requested that the trial judge inform
the jury that the Gibsons were no longer inter-
ested parties in this suit. Counsel for plaintiffs
concurred in this request. Counsel for the defen-
dant Melody Bar requested that the trial judge
require the continued trial participation of the
Gibsons through closing arguments and jury delib-
eration in spite of the settlement between plain-
tiffs and defendants Gibson. Finding that there
had been no collusion between plaintiffs and the
Gibsons and that the $40,000 settlement was not a
mere token settlement, the trial judge concluded
that to require continued trial participation by the
Gibsons would amount to an injustice and would
discourage future settlements in similar cases.
Therefore, the trial judge ruled that he would
inform the jury that the Gibsons were no longer
parties in this suit. Counsel for the defendant
Melody Bar thereupon made a motion to dismiss
plaintiffs' suit against his client. The motion to
dismiss was denied.

In accord with this ruling, and prior to final

arguments of the parties to the jury, the trial court informed the jury that it was to no longer concern itself with plaintiffs' suit against the Gibsons:

"The Court will say further to the Jurors that the case of Loretta J. Putney, Individually and as Administratrix of the Estate of Stanley H. Putney, Deceased, against the defendant Paul Gibson and Judith M. Gibson, has been dismissed. And you are no longer to concern yourselves with that particular case. You need not speculate about the reasons for this action. We will simply go ahead at this point to complete the trial of the case of the remaining defendants.

"That is to say the individual plaintiffs Curtis G. Putney, Curtis G. Putney, Jr., and Loretta J. Putney, against the defendants Allen H. Haskins and Sharol A. Haskins, individually and doing business as the Melody Bar. That is the case which will be submitted to you for your decision."

The jury was then instructed, and, after deliberation, it returned a verdict in favor of plaintiffs for $25,000. The damages assessed against defendant Melody Bar were apportioned among the plaintiffs by the jury: plaintiff Loretta J. Putney, $10,000; plaintiff Curtis G. Putney, $10,000; plaintiff Steven B. Putney $5,000; and plaintiff Curtis Putney, Jr., $50.

On December 22, 1977, plaintiffs filed a motion for a new trial or, in the alternative, *additur.* On January 9, 1978, counsel for defendant Melody Bar submitted a proposed judgment to the trial court that would have set off against the jury's verdict both the $40,000 that plaintiffs received from the Gibsons and the $8,000 that plaintiffs received from the Hoover Corner Bar.

On May 8, 1978, the trial court heard arguments on plaintiffs' bifurcated motion and on defendant

Melody Bar's proposed judgment. On June 5, 1978, the trial court rendered an oral opinion denying defendant Melody Bar's proposed judgment with respect to setting off against the jury's verdict the $40,000 received by plaintiffs from the Gibsons. The trial judge held that defendant Melody Bar was not entitled to have the Gibson settlement set off against the verdict because the liability of the Gibsons to plaintiffs arose out of the wrongful death act whereas the liability of defendant Melody Bar to plaintiffs arose out of the dramshop act. Thus, the trial judge reasoned that defendant Melody Bar was not entitled to this setoff because the parties to the wrongful death action were not the same as those in the dramshop action and, further, the measures of damages under these two actions were not identical. The trial judge did permit defendant Melody Bar to set off against its liability the $8,000 received by plaintiffs from the Hoover Corner Bar. The trial judge held that the liability of both of these taverns to plaintiffs arose out of the dramshop act and that the money received by plaintiffs from the Hoover Corner Bar represented compensation for the same injuries that plaintiffs recovered in the jury's verdict. Therefore, in order that plaintiffs would not be paid twice for the injuries, the trial judge granted this part of the setoff requested by defendant Melody Bar in its proposed judgment.

Defendant Melody Bar now appeals of right and claims as error the rulings of the trial judge denying its motion to dismiss for failure of plaintiffs to name and retain as a defendant the alleged intoxicated person throughout trial and denying its proposed judgment with respect to the requested setoff of the settlement reached by plaintiffs with the Gibsons against the jury's verdict.

We first consider defendant Melody Bar's claim of error by the trial judge in denying its motion to dismiss for failure of plaintiffs to name and retain the alleged intoxicated person throughout trial.

The so-called "name and retain" provision of the dramshop act, MCL 436.22; MSA 18.993, provides:

"No action against a retailer or wholesaler or anyone covered by this act or his surety, shall be commenced unless the minor or the alleged intoxicated person is a named defendant in the action and is retained in the action until the litigation is concluded by trial or settlement."

The name and retain requirement has withstood broad constitutional attack on the basis of due process and equal protection. *Rowan v Southland Corp,* 90 Mich App 61; 282 NW2d 243 (1979).

However, the name and retain provision is not without its exceptions. In *Salas v Clements,* 399 Mich 103; 247 NW2d 889 (1976), the Michigan Supreme Court held that the name and retain requirement of the dramshop act did not apply to a plaintiff who, after exercising due diligence in attempting to ascertain the identity of the alleged intoxicated person, was unable to do so. Our Supreme Court set forth the purpose of the "name and retain" amendment as follows:

" 'The provision will eliminate the common practice whereby the intoxicated person enters into a settlement with the injured plaintiff for a token sum, and thereafter energetically assists the plaintiff with the prosecution of a suit against the tavern owner. The provisions will also discourage possible collusion and perjury by those too weak to resist the obvious temptation inherent in the original dramshop act, which has now been recognized by the Legislature and corrected through

this amendment.' 57 Mich App 367, 372; 226 NW2d 101 (1975).

"In determining whether plaintiffs in this case are barred from suing under the dramshop act, we must keep in mind the fundamental rule of statutory construction that departure from the literal construction of a statute is justified when such construction would produce an absurd and unjust result and would be clearly inconsistent with the purposes and policies of the act in question." *Salas, supra,* 108-109.

Also see *Woobeck v Curley,* 85 Mich App 605, 608; 272 NW2d 152 (1978).

In *Scholten v Rhoades,* 67 Mich App 736; 242 NW2d 509 (1976), this Court held that the name and retain provision did not require a plaintiff parent to name and retain a child as a defendant in a dramshop action against a tavern. The Court held that the Legislature could not have intended the contrary result, because Michigan law did not recognize a parent's right to recovery against a child; and, therefore, the plaintiff parent could not have maintained a suit against his child.

Following the rule laid down in *Eddy v Courtright,* 91 Mich 264, 267; 51 NW 887 (1892), this Court stated in the case of *Dickerson v Heide,* 69 Mich App 303, 309; 244 NW2d 459 (1976), as follows:

"Although in derogation of common law, our Courts have, stressing the remedial nature of the act, construed the statute liberally and eschewed 'any strained or narrow construction' of its words."

In *Dickerson* the Court held that the name and retain provision did not bar a suit by the plaintiff parents against the dramshop owner who allegedly made an illegal sale of alcohol to the intoxicated driver of a car in which their son was killed. In

that case, the defendant argued that the plaintiff parents had failed to name and retain the intoxicated driver as a defendant. The plaintiffs responded that they could not name and retain the driver as a defendant because the only cause of action existing for survivors of a decedent had to be predicated on the wrongful death act. MCL 600.2922; MSA 27A.2922. Because the wrongful death act permits such actions to be brought only by the personal representative of the deceased, which the plaintiff parents in *Dickerson* were not, the plaintiff parents argued that the name and retain provision of the dramshop act did not preclude their suit. On appeal, this Court affirmed the lower court's denial of the defendant's motion for summary judgment, holding that, although it was in derogation of common law, the dramshop act was also remedial in nature and should be given a liberal construction. The Court also noted *that a literal interpretation of the dramshop act would cause an unfortunate and unintended result in the case before it and that a rejection of its literal wording would further the intent of the statute.*

In *Buxton v Alexander,* 69 Mich App 507; 245 NW2d 111 (1976), *lv den* 399 Mich 827 (1977), this Court reversed a trial Court's grant of accelerated judgment in favor of a dramshop defendant and gave the name and retain provision of the dramshop act further interpretation. In *Buxton* the plaintiffs entered into an indemnification agreement with the alleged intoxicated tortfeasor four days prior to trial. In consideration of $19,000, the plaintiffs agreed to hold the intoxicated driver harmless from any damages that the jury might award above this amount. As part of the agreement the intoxicated driver was to continue as a named defendant in the dramshop suit. The defendant tavern owner argued that the indemnification

agreement constituted a settlement and thus a
nonretention under the name and retain provision.
The trial court found in favor of the defendant and
granted the defendant's motion for accelerated
judgment. On appeal this Court reversed, finding
that the plaintiffs had "retained in the action" the
intoxicated driver as a named defendant within
the usual meaning of the word "retain". The Court
then continued to balance the purpose of the name
and retain provision against the public policy en-
couraging settlement of litigation, as follows:

"The statute is not intended to *prohibit* settlement
between a plaintiff and his intoxicated tortfeasor except
where claims against tavern owners are first or simulta-
neously settled. On the contrary, the language of the
statute indicates only an intention to require the intoxi-
cated tortfeasor to be retained as a defendant. In enact-
ing this "special interest legislation" the Legislature
has manifested an intention to prohibit a plaintiff from
going to a jury with only a claim versus a tavern. The
plaintiff must not only name but must retain the tort-
feasor in the lawsuit. But that is all the statute re-
quires. To prohibit a plaintiff from a "hold harmless"
type settlement, as was used here, would impede the
prompt disposition of litigation and force trials of cases
that would otherwise be settled. In so holding, this
Court recognizes the power of the trial court to control
the course of trial; for example, a trial court might, at
the option of a tavern owner, prohibit any reference at
trial to the settlement. Thus, the legislative purpose
could be amply carried out.

"In this case the effect of the trial court's ruling was
to prohibit settlement between plaintiffs and the al-
legedly intoxicated defendant, except after or simulta-
neously with settlement between plaintiffs and the
tavern owners. As indicated, this goes beyond the pur-
pose and language of the statute." *Buxton, supra,* 511.

In the recent case of *Rowan v Southland Corp,*

*supra,* our Court cited *Buxton* for the proposition that a plaintiff may bring an action against an alleged intoxicated person and tavern owner and without impairing rights against one settle with the other:

"Plaintiffs argue that they should be exempted from compliance with the name and retain provision because it would be a futile act to join the allegedly intoxicated person at this stage. Plaintiffs earlier brought an action against the alleged intoxicated person, and reached a settlement with him. If joined in the present action, the putative drunk could successfully move for dismissal, raising the prior action as a bar. We find this argument unpersuasive. Plaintiffs are not free to circumvent the requirements of the dramshop act by waiting until they have reached settlement with the drunken driver before bringing an action against the liquor licensee. They were free to bring an action against both the defendants herein and the alleged drunk, as required by the act, and then to reach a settlement with one or both parties, *Buxton v Alexander,* 69 Mich App 507; 245 NW2d 111 (1976). They chose not to do so. We are not disposed to relieve them of the consequences of that freely-made choice." *Rowan v Southland Corp, supra,* 69.

We rule under the authorities hereinabove cited that the trial court acted properly in denying defendant Melody Bar's motion to dismiss. The settlement by plaintiffs with the Gibsons did not violate the legislative intent in the name and retain provision, because that settlement was not for a mere token sum. Under the facts in this case there could not have been any collusion between plaintiffs and the Gibsons to the detriment of the Melody Bar. Further, the Melody Bar has not pointed to any prejudice that it may have suffered by the trial court's refusal to dismiss the suit.

We consider next defendant Melody Bar's claim

of error by the trial court in denying its request to set off against the jury's verdict the amount of money plaintiffs received in their settlement with the Gibsons.

The right of a tavern keeper to contribution from the intoxicated person under the dramshop act was answered in the negative in the case of *Virgilio v Hartfield,* 4 Mich App 582, 584-585; 145 NW2d 367 (1966), wherein Judge, now Justice, T. G. KAVANAGH, speaking for the Court, stated:

"Since no other basis for liability to the third-party plaintiff is asserted, the question for our determination is whether a bar owner who serves an intoxicated person intoxicants is a joint tort-feasor in a tort committed by the intoxicated person. We hold he is not.

"The obligation of a bar owner is created by the dram shop act and allows for recovery of both actual and exemplary damages, said liability being purely statutory. Any obligation of the driver exists by virtue of some other reason and not by virtue of this statute.

"The actions of the intoxicated driver have given rise to a separate suit against him on the theory of gross negligence. The defendant tavern keeper's liability is not grounded on any theory of negligence but arises because of violation of the statute. An active wrongdoer and persons liable by reason of statutory enactment are not joint tort-feasors even though there is a single indivisible injury. See *Geib v Slater* (1948), 320 Mich 316; *Boucher v Thomsen* (1950), 328 Mich 312 (20 ALR2d 1038); and *Varano v Express Freight Lines, Inc.* (ED Wis 1959), 176 F. Supp 71.

"Among joint tort-feasors there is the right of contribution since their liability arises under the common theory of negligence. If a judgment is obtained against one tortfeasor, the other is liable to him for his pro rata share. Such is not the case here. The statute imposes liability solely on the tavern keeper and his surety and he has no right to contribution from the intoxicated driver. The tavern keeper is not jointly liable to the plaintiff in tort, therefore, he cannot be a joint tort-

feasor. *Husted v Consumers Power Company* (1965), 376 Mich 41." (Footnote deleted.)

Within two years thereafter this Court considered the question of whether a tavern owner sued under the dramshop act may properly implead and seek contribution from another tavern owner claimed to have made a sale unlawful under that act which was causally connected with plaintiff's injury. That query was answered in the affirmative in *Duncan v Beres,* 15 Mich App 318, 323-324; 166 NW2d 678 (1968), wherein Judge, now Justice, LEVIN, speaking for the Court, stated:

"Contribution may be enforced, however, only among persons whose equities are equal. That requirement is satisfied when the parties are under a common burden, obligation or liability to the plaintiff, statutorily or otherwise imposed or assumed.

"In this case, both the claim asserted by the plaintiffs against the third-party plaintiff and that asserted by the third party plaintiff against the third party defendant arise under a common theory of liability to the plaintiffs. It is asserted that both the third-party plaintiff and third-party defendant made sales to the allegedly intoxicated person after he became intoxicated, sales that were causally connected with plaintiff's injuries.

"If this is true, if violations of the dramshop act by both the third-party plaintiff and the third-party defendant contributed to plaintiff's loss, then plaintiffs may recover all their damages from either of them. *Franklin v Frey* (1895), 106 Mich 76, 77, 78; *Larabell v Schuknecht* (1944), 308 Mich 419, 423. Thus would arise a common burden of liability under the dramshop act on the part of both tavern owners and distinguishes this case from *Virgilio v Hartfield* (1966), 4 Mich App 582." (Footnote deleted.)

In the case of *Barton v Benedict,* 39 Mich App

517; 197 NW2d 898 (1972), it was ruled that it is necessary to allow mitigation of a dramshop judgment for "actual" damages by a wrongful death settlement for "pecuniary" damages, but that any "exemplary" damages in the dramshop action would not be mitigated, since "exemplary" damages are penal in nature and differ in kind from the wrongful death damages.

We believe, however, that the dissenting opinion sets forth the proper rule as to setoff and mitigation, in it Judge TARGONSKI stated:

"A careful reading of my colleagues' prevailing opinion indicates that we must concur in the conclusion reached therein by reversing but must respectfully disagree with that portion of the opinion which says that for purposes of avoiding redundancy it is necessary to allow mitigation of the dramshop judgment for "actual" damages by the wrongful death settlement for "pecuniary" damages. I believe that that conclusion seeks to do by indirection that which cannot be done directly. There is no question that the dramshop defendant could not sue for contribution from the car driver. Yet by setting off the recovery from the car driver against the dramshop-defendant judgment, there appears to be such indirect contribution. We concur in part in the result as indicated above." *Barton, supra,* 525.

But see, *Reno v Heineman,* 56 Mich App 509; 224 NW2d 687 (1974).

The majority in the *Barton* case placed reliance on the authority of a 1953 decision of the intermediate appellate court of Illinois, *DeLude v Rimek,* 351 Ill App 466; 115 NE2d 561 (1953). It now appears that *DeLude* is open to question in the State of Illinois. In the case of *Wessel v Carmi Elks Home, Inc,* 54 Ill 2d 127; 295 NE2d 718 (1973), the plaintiff alleged that the defendant

tavern owners had served a person, who, while intoxicated, drove an automobile through the side of a house, killing one occupant and injuring another. The defendant tavern owners denied liability and filed a third-party action seeking indemnity from the intoxicated driver in the event that any damages were assessed against the defendant tavern owners. The trial court dismissed the third-party complaint for indemnity, which action was affirmed by the Illinois Court of Appeals. The Illinois Supreme Court also affirmed, holding that one who may incur liability under the dramshop act has no right to seek indemnification from the intoxicated person whose activity is alleged to be the primary or active cause of the damages.

In reaching its decision, the court declared that policy considerations were of substantial importance. First, the court noted that the dramshop act is designed to temper the consumption of alcoholic liquors and to protect the health, safety and welfare of the general public. The dramshop statute disciplines dramshop operators and owners for their indiscriminate sale of liquor and for the evils which would result therefrom. Part of the discipline of the dramshop act, stated the court, was of an indirect nature arising from the owners' or operators' fear of cancellation of insurance or prohibitive premiums. The court also stated in part as follows:

"We believe that by permitting the extension of the right of indemnity in this case, the public policy expressed in the statute would be frustrated and its disciplinary feature diminished. Absent a clear legislative mandate to the contrary, *the case accruing for a violation of the statute should be borne by those profiting from the sale of liquor to the public who enter such commercial enterprises with full knowledge of this*

*attendant liability."* 54 Ill 2d at 131-132; 295 NE2d at 721. (Emphasis supplied.)

By this opinion, the Supreme Court of Illinois ruled that those who incur liability under the Illinois dramshop act *may not seek indemnity from the intoxicated person causing the injury.*

In a more recent decision of the Illinois Supreme Court in the case of *Lein v Pietruszewski,* 61 Ill 2d 350; 335 NE2d 772 (1975), the issue was given further consideration. Plaintiff's decedent in that case was fatally stabbed, and his widow, as administratrix of his estate, filed a two-count complaint. Count one was based on a violation of the Illinois dramshop act, and count two was brought under the Illinois wrongful death act against the assailant who attacked the decedent. A trial was held and the jury found for the plaintiff on Count two for the wrongful death of the decedent and set damages at $15,000. A verdict was returned in favor of plaintiffs in the dramshop actions on count one in the amount of $135,000. Since recovery under the Illinois dramshop act was limited to a maximum of $20,000, the trial court reduced the verdict against the tavern owner to this amount. On appeal to the Supreme Court of Illinois, the defendant tavern owners argued that the elements for dramshop damages, loss of "means of support", were included within "pecuniary" damages recoverable under the Illinois wrongful death act, and therefore, the dramshop recovery could equal but not exceed damages allowed under the wrongful death act, and requested the Supreme Court to reduce the judgment against them from $20,000 to $15,000. In rejecting the defendants' contentions, the court stated:

"Review of the various appellate court opinions cited

by defendants reveals numerous attempts by those subjected to potential liability under the Dramshop Act to preclude or mitigate damages rendered thereunder. Explication of these cases is unnecessary. It is sufficient to note that none of the appellate court decisions concern the precise issue presented in this appeal." 61 Ill 2d at 352; 335 NE2d at 773.

The court then noted the purposes and objectives of the wrongful death and dramshop statutes were essentially different, reviewing a number of previously decided cases, and in continuing stated:

"We further stated that the statutory enactments 'are not only separate and distinct but are based upon different powers of the state. The rights created by the two statutes do not rest upon the same basis.' * * * These conclusions were reaffirmed in *Izzo [Knierim v Izzo,* 22 Ill 2d 73; 174 NE2d 157 (1961)] where it was further observed that the bases of liability are not the same in these statutory causes of action. As pertinent to this appeal, we said in *Izzo* 'that the nature and amounts of damages provided for in the Liquor Control Act are not to be limited [citation] or expanded [citation] by the provisions of the Wrongful Death Act.' " 61 Ill 2d at 352; 335 NE2d at 773.

The court concluded as follows:

"Even though there may be a common element as to damages, there exist substantial differences between wrongful death and dramshop actions which militate against affording dramshop defendants the opportunity to limit liability by the fortuitous circumstances presented in this case." 61 Ill 2d at 353; 335 NE2d at 773-774.

It seems to us under these recent Illinois Supreme Court decisions that Illinois has rejected the concept that a dramshop violator should be able to

escape the consequences of his wrongful conduct by shifting the responsibility for paying damages to someone else—such as the intoxicated tortfeasor. It also appears that the citation in *Barton v Benedict, supra,* to the Illinois appellate civil case of *DeLude v Remick,* 351 Ill App 466, 473; 115 NE2d 561, 564-565 (1953), would be inappropriate now, at least as to the facts in the present case.

In the case of *Mason v Lovins,* 24 Mich App 101, 117-119; 180 NW2d 73 (1970), this Court was faced with a fact situation similar to that in the instant case. There, plaintiffs brought a dramshop action against two taverns and a wrongful death action against an alleged intoxicated driver. Plaintiffs settled the wrongful death action and the dramshop act claim against one of the tavern owners. The remaining dramshop defendant requested a jury instruction to the effect that any award to plaintiffs should be reduced by the amount of plaintiffs' settlements with the alleged intoxicated driver and other tavern owner. The trial judge granted this request with respect to the settlement reached by plaintiffs with the tavern owner but denied it with respect to the settlement reached by the plaintiffs with the alleged intoxicated driver.

On appeal, this Court affirmed, finding that the right of the plaintiffs to recover under the dramshop act was separate and distinct from the right of recovery under the wrongful death act.

In *Bohannon v Campbell,* 38 Mich App 422; 196 NW2d 836 (1972), the plaintiff was injured by an intoxicated driver. The dramshop defendant sought to diminish plaintiff's judgment against it by $13,365.68 the amount the plaintiff recovered under his uninsured motorist policy. It was the dramshop defendant's contention that this sum should be deducted from the $17,500 judgment

against it, in order to prevent double recovery. Quoting from an earlier Supreme Court case, *Motts v Michigan Cab Co,* 274 Mich 437, 445; 264 NW 855 (1936), Judge R. B. Burns reiterated that:

" ' "We see no reason why one whose acts have caused injury to another should reap the entire benefit that comes from the payment of wages made by an employer, either as a gratuity to a faithful employee or because such payments are required by contract. Such payments do not change the nature of the injury which the employee sustains through the wrongful acts of the tortfeasor. If either is to profit by the payments made by the employer, it should be the person who has been injured—not the one whose *wrongful* acts caused the injury." ' (Emphasis supplied.)" *Bohannon, supra,* 426.

The trial judge in the instant case permitted the defendant Melody Bar to properly set off the settlement amount of $8,000 received by the plaintiffs from the Hoover Corner Bar from the verdict rendered against it. *Duncan v Beres, supra.*

Under the decision of our Court in the case of *Virgilio v Hartfield, supra,* the dramshop defendant could not require contribution from the intoxicated driver defendant. This is still the law in Michigan.

To permit the defendant herein to set off from the verdict against it the sum that the plaintiffs received in settlement from the Gibsons would, in effect, permit indirectly that which it could not do directly, *i.e.,* require contribution from the intoxicated driver. It would also be an unfair precedent resulting in the Melody Bar and others in like positions being relieved of responsibility to deserving plaintiffs under the dramshop act.

It would also be incongruous with the public

policy of our state which has mandated the control of the sale of alcoholic beverages by the enactment of the dramshop act for the protection of the health, safety, and welfare of the public.

We hold that the statute should be effective making every guilty tavern owner liable, in keeping with the intent of the act. This should be especially true under the facts in this case where a young lad of 16 years lost his life as a result of the unlawful sale by defendant tavern owner.

We therefore affirm the trial court.

Costs to plaintiffs.