RILEY v RICHARDS

Docket No. 77507. Argued March 4, 1987 (Calendar No. 12). Decided
    May 8, 1987.

Julia Riley brought a dramshop action in the Wayne Circuit
    Court against James N. Richards and Palmiter Recreation, Inc.,
    seeking damages resulting from an automobile accident involv-
    ing Richards and alleging that prior to the accident Palmiter
    had served alcoholic beverages to Richards while he was visibly
    intoxicated. The court, Patrick J. Duggan, J., entered judgment
    on a jury verdict for the plaintiff, but granted judgment not-
    withstanding the verdict on the ground that a stipulation
    between the plaintiff and Richards limiting damages in ex-
    change for an admission that Richards was intoxicated was a
    settlement in violation of the name and retain provision of the
    dramshop act. The Court of Appeals, BEASLEY, P.J., and M. J.
    KELLY, J. (WARSHAWSKY, J., dissenting), reversed, holding that
    the stipulation did not exclude Richards as an interested party
    and did not bar the action against Palmiter (Docket No. 77442).
    Palmiter appeals.

    In an opinion by Justice BRICKLEY, joined by Chief Justice
    RILEY and Justices LEVIN, CAVANAGH, BOYLE, and GRIFFIN, the
    Supreme Court held:

    The agreement between the plaintiff and the allegedly intoxi-
    cated defendant to limit his liability to the maximum of his
    insurance coverage in return for an admission of intoxication
    and negligence and waivers as to admission of evidence of
    intoxication violated the "name and retain" provision of the
    dramshop act, regardless of the fact that the allegedly intoxi-
    cated person continued to defend the issue of damages.

    Under the dramshop act, a liquor licensee may not provide
    alcoholic beverages to a person who is visibly intoxicated. A

REFERENCES

Am Jur 2d, Intoxicating Liquors §§ 561, 569, 571, 578, 590, 596.
Intoxicating Liquors: right of one liable under Civil Damage Act to
    contribution or indemnity from intoxicated person, or vice versa.
    31 ALR3d 438.
Settlement with or release of person directly liable for injury or
    death as releasing liability under civil damage act. 78 ALR2d 998.

resultant action against a licensee may not be commenced unless the allegedly intoxicated person is a named defendant in the action and is retained in the action until the litigation is concluded by trial or settlement. There can be no degrees of compliance with the "name and retain" provision. Where settlement of any kind is reached with the allegedly intoxicated person prior to conclusion of the litigation either by trial or settlement, that person has not been retained in the action and ceases to be a real party in interest. Thus, further action against the dramshop owner is barred.

Reversed.

Justice Archer, dissenting, stated that under the facts of the case the allegedly intoxicated person was a named defendant and was retained in the action until concluded by trial. Although the defendant admitted intoxication and negligence, he vigorously defended the issue of no serious impairment of a body function which, if successful, would have resulted in a verdict of no cause of action. There was no settlement in that the plaintiff was not guaranteed a sum certain.

144 Mich App 584; 376 NW2d 162 (1985) reversed.

1. Intoxicating Liquors — Dramshop Act — "Name and Retain" Provision.

   An agreement between the plaintiff and an allegedly intoxicated defendant in a dramshop action to limit the liability of the defendant to the maximum of his insurance coverage in return for an admission of intoxication and negligence as well as waivers as to admission of evidence of intoxication, violated the "name and retain" provision of the dramshop act, regardless of the fact that the defendant continued to defend the issue of damages (MCL 436.22[5]; MSA 18.993[5]).

2. Intoxicating Liquors — Dramshop Act — "Name and Retain" Provision — Settlement.

   There can be no degrees of compliance with the "name and retain" provision of the dramshop act; where settlement of any kind between a plaintiff and an allegedly intoxicated defendant is reached prior to conclusion of litigation either by trial or settlement, the defendant has not been retained in the action and ceases to be a real party in interest (MCL 436.22[5]; MSA 18.993[5]).

*Thurswell, Chayet & Weiner* (by *Janet M. Brandon, Gerald E. Thurswell,* and *Harvey Chayet*) for the plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk &
Pedersen, P.C.* (by *John P. Jacobs* and *Deanna E.
Hazen*), for defendant Palmiter Recreation, Inc.

BRICKLEY, J.

### INTRODUCTION

In this case, we are asked to determine the
limits of the "name and retain" provision of the
Michigan dramshop act, MCL 436.22(5); MSA
18.993(5), specifically, whether the Court of Ap-
peals was correct in its conclusion that the provi-
sion is complied with when the allegedly intoxi-
cated person, in return for plaintiff's agreement to
limit liability, admits intoxication, negligence, and
causation, and waives privileges and objections to
evidence, while continuing to defend on the issue
of damages. We hold that, under the agreement in
this case, the allegedly intoxicated person was not
"retained in the action" as required by MCL
436.22(5); MSA 18.993(5). Accordingly, we reverse
the judgment of the Court of Appeals and rein-
state the trial court's judgment notwithstanding
the verdict.

### I. FACTS AND PROCEDURES

On November 7, 1979, plaintiff's automobile was
struck from the rear by a vehicle driven by the
defendant. Plaintiff Riley brought this action un-
der the Michigan dramshop act, MCL 436.22; MSA
18.993, against defendant Richards and Palmiter
Recreation, Inc., doing business as Fort Park Bar
& Recreation. The action named Richards as the
allegedly intoxicated person and alleged that Pal-
miter, through its agents or employees, served
alcoholic beverages to Richards while he was visi-

bly intoxicated. Plaintiff sought to recover damages for injuries sustained in the collision.

On the morning of the first day of trial, plaintiff and defendant Richards stipulated, for the record, to an agreement limiting damages in exchange for admissions and waivers. The Court of Appeals reported the agreement as follows:

> [*Ms. Brandon, plaintiff's counsel*]: Second, we would like to put on a stipulation that has been entered into between defendant Richards and plaintiff, in that we will be agreeing to cap the policy limits to 20,000 dollars in exchange for the defendant's stipulation of allowing in evidence that Mr. Richards' blood alcohol level was .20 when the breathalyzer test was taken on the night of the accident. Does that summarize . . .
>
> *Mr. O'Neill* [*counsel for defendant Richards*]: If I could just elaborate on that. The stipulation is that the plaintiff would agree to limit her recovery against my client, Mr. Richards, to the 20,000 dollars worth of liability insurance that he has, there will be no interest on that amount, in exchange for my client's admission of negligence and the causation of the accident.
>
> Also, in exchange for his admittion [sic] that he blew .20 on the breathalyzer test. I don't know if that is the same as the blood alcohol level.
>
> *Ms. Brandon:* All right.
>
> *Mr. O'Neill:* Also, further, I indicated I would not object to the calling of Doctor Werner Spitz as a witness on her behalf.
>
> *The Court:* Okay.
>
> *Mr. O'Neill:* Those are the terms of the stipulation?
>
> *Ms. Brandon:* Yes. [144 Mich App 584, 587; 376 NW2d 162 (1985).]

Defendant Palmiter objected to the stipulation and moved for summary judgment in accord with this Court's decision in *Putney v Haskins,* 414

Mich 181; 324 NW2d 729 (1982), reh den 414 Mich 1111 (1982). The trial court denied the motion pursuant to its understanding of Administrative Order No. 1983-1, 417 Mich cxviii (1983), which suspended decisions on all summary judgment motions brought under *Putney*.[1]

The case proceeded, and, at trial, Richards admitted intoxication and negligence, waiving his objections to the admission of the Breathalyzer results and expert testimony. Richards did, however, defend the damages issue by arguing that plaintiff had not sustained serious impairment of body function. Defendant Palmiter argued, in its defense, that the evidence was insufficient to establish that one of its employees or agents had served Richards alcoholic beverages while he was visibly intoxicated.

The jury returned a verdict of $255,000, jointly and severally, against Richards and Palmiter. A separate verdict of $10,500 was also entered against Palmiter for economic damages.

On November 18, 1983, Palmiter argued a motion for judgment notwithstanding the verdict, for new trial, or for remittitur. After the trial court reconsidered the applicability of Administrative Order No. 1983-1, and, after this Court released

---

[1] The order was as follows:

> On order of the Court, leave to appeal having been granted in *Tebo v Havlik*, Docket No. 68033, and *Burns v Carver*, Docket No. 70881, to consider the question of the retroactivity of *Putney v Haskins*, 414 Mich 181 (1982), it is ordered that trial courts shall not deny claims, by accelerated judgment under GCR 1963, 116, summary judgment under GCR 1963, 117, or otherwise, based on the principles of *Putney v Haskins* until the decisions in *Tebo v Havlik* and *Burns v Carver*, or until further order of the Court.

Following the release of *Tebo v Havlik*, 418 Mich 350; 343 NW2d 181 (1984), this order was rescinded by Administrative Order No. 1984-3, 418 Mich lxxxiv.

*Tebo v Havlik,* 418 Mich 350; 343 NW2d 181 (1984), reh den 419 Mich 1201 (1984), Judge Duggan granted judgment notwithstanding the verdict. Judge Duggan found that the stipulation was, in fact, a "settlement" as prohibited by *Putney.*

Plaintiff and defendant Richards filed a satisfaction of judgment for the agreed limit of $20,000, and the plaintiff appealed the judgment notwithstanding the verdict in the Court of Appeals.

The opinion of the Court of Appeals reversed the judgment of the trial court and concluded that the stipulation neither excluded Richards as an interested party nor barred plaintiff's dramshop action against Palmiter. Judge WARSHAWSKY dissented. He found the "stipulation" to be a settlement between the plaintiff and the allegedly intoxicated person before the conclusion of litigation; thus, it was contrary to the objectives of the dramshop statute and the holding of *Putney.*

## II. THE DRAMSHOP ACT, "NAME AND RETAIN" PROVISION

The preamble of the Michigan liquor control act states that the purposes of the act are, in part, "to provide for the control of the alcoholic liquor traffic within the state of Michigan, . . . to provide for the enforcement and to prescribe penalties for violations of this act." A measure of the state's power of control and licensing is evidenced by what is known as the "dramshop act," MCL 436.22; MSA 18.993. Subsection (3) of the act forbids a licensee to sell, furnish, give, or deliver alcoholic liquor to a person who is visibly intoxicated, and imposes liability for violations. Subsection (5) of the act provides the requirements and procedures for bringing an action for injuries caused by furnishing alcohol to intoxicated persons.

The language of section (5) of the statute, which is relevant to this case, is known as the "name and retain" provision:

> An action against a retailer, wholesaler, or anyone covered by this act or a surety, shall not be commenced unless the minor or the alleged intoxicated person is a *named defendant* in the action and is *retained in the action* until the litigation is concluded by trial or settlement. [Emphasis added.]

Because the Legislature did not define the parameters of "named" or "retained," it is the duty of this Court to provide definitional guidance within the boundaries of legislative intent. In *Putney v Haskins* and *Tebo v Havlik,* we articulated the requirements for an alleged intoxicated person to be named and retained in accordance with the act.[2]

### III. "NAME AND RETAIN" DEFINED: *PUTNEY v HASKINS; TEBO v HAVLIK*

In *Putney,* the plaintiff's decedent was killed when an automobile struck the rear of his motorcycle. Plaintiff brought a cause of action against Paul S. Gibson, the operator of the automobile, Judith M. Gibson, the owner of the automobile, and the owners of the taverns that had allegedly sold or furnished alcohol to Paul S. Gibson while he was visibly intoxicated.

On the morning of the first day of trial, the plaintiff settled with one of the defendant tavern owners. On the morning of the second day of trial, the plaintiff informed the court that she had set-

---

[2] See, generally, 61 Mich B J 890 (1982); Petersen, *The name and retain provision of the Michigan dramshop act: Will strict construction defeat its purpose?,* 2 Cooley L R 195 (1984); Brake, *Putney v Haskins: A strict construction of the Michigan dramshop act's "name and retain" provision,* 15 U Toledo L R 1631 (1984).

tled with defendants Paul S. Gibson, the allegedly intoxicated person, and Judith M. Gibson for $40,000 in exchange for a covenant not to sue. The Gibsons were not formally dismissed from the suit, and the jury was not informed of the settlement. The trial judge instructed the defendants' counsel to " 'do what you consider appropriate without attempting to hurt or help either side.' " 414 Mich 185. Counsel examined several witnesses, but neither participated in the examination of the allegedly intoxicated person nor called any witnesses on behalf of his clients.

Prior to jury instructions, the Gibsons requested that the jury be informed that they were no longer interested parties in the suit, and the plaintiff concurred. However, defendant tavern owner Haskins requested that the Gibsons be required to participate through closing arguments and jury deliberation in spite of the settlement. The trial court found as fact that there had been no collusion between Putney and the Gibsons and that the $40,000 settlement was not a mere token. Presumably, the trial court was attempting to comply with our decision in *Salas v Clements,* 399 Mich 103; 247 NW2d 889 (1976), where we stated:

"The provision will eliminate the common practice whereby the intoxicated person enters into a settlement with the injured plaintiff for a token sum, and thereafter energetically assists the plaintiff with the prosecution of a suit against the tavern owner. The provisions will also discourage possible collusion and perjury by those too weak to resist the obvious temptation inherent in the original dramshop act, which has now been recognized by the Legislature and corrected through this amendment." [399 Mich 108-109.]

The trial court concluded that continued participa-

tion would amount to an injustice and discourage
future settlements. Hence, the jury was informed
that the suit against the Gibsons had been dis-
missed. A verdict in favor of the plaintiff in the
amount of $25,050 was returned. The Court of
Appeals affirmed, finding the settlement to be
more than a mere token, and no collusion to the
detriment of Melody Bar (Haskins). 94 Mich App
466; 289 NW2d 837 (1979).

This Court reversed, rejecting the argument that
the "name and retain" provision had been "sub-
stantially complied with."

> In the first place, in the absence of a record
> adequately supporting such factual findings, we
> cannot presume that the $40,000 settlement pre-
> cludes all possible collusion. It is not at all obvious
> that a $40,000 settlement in a wrongful death case
> arising from the defendant's alleged drunken driv-
> ing is more than "token."[3] However, such difficult
> factual questions were avoided when the Legisla-
> ture adopted a per se rule requiring the defendant
> to be "retained in the action until the litigation is
> concluded by trial or settlement." The Legislature
> could have required the allegedly intoxicated de-
> fendant to be retained "unless the trial judge finds
> the absence of fraud and collusion and approves
> the settlement." For some reason, perhaps because
> it recognized the difficulties inherent in that sort
> of inquiry and the resulting drain on judicial
> resources, the Legislature chose not to write such
> an exception into the statute. We similarly decline
> to create such an exception by judicially amending
> the statute.

> ---
> [3] The plaintiffs' complaint asked for $500,000 in damages; the
> $40,000 settlement may well have been paid entirely or in part
> by defendants' insurer.

[414 Mich 187.]

We also rejected the argument that because

Gibson was not formally dismissed, he was retained long enough to satisfy the statute. Once he settled with the plaintiffs, he ceased to be a real party in interest.

The Court acknowledged that the Legislature was aware that dramshop cases have a singular danger of fraud and collusion and enacted the "name and retain" provision to avoid the attending danger.

> One of the ways the "name and retain" provision prevents fraud and collusion is by ensuring that the defendant will have a *direct financial stake* in personally testifying, examining witnesses, and arguing that he did not act in a *negligent* manner. *Once the defendant's liability is fixed and limited, he has no incentive to produce witnesses or testimony tending to prove that he was not "visibly intoxicated" on the date in question.* The dramshop defendant may have much more difficulty in identifying, locating, and obtaining favorable testimony from the defendant's friends or acquaintances who observed him at relevant times. [414 Mich 188. Emphasis added.]

Accordingly, we held that a defendant has not been retained in an action "if a settlement *of any kind* is reached between the plaintiff and the allegedly intoxicated defendant before 'the litigation is concluded by trial or settlement.'" 414 Mich 184. (Emphasis added.)

In *Tebo v Havlik,* the Court considered two cases in which the liability of allegedly intoxicated persons had been fixed by agreement, but ostensibly "retained." We rejected the arguments that the allegedly intoxicated persons had been retained in accord with the dramshop act, and then considered what retroactive effect *Putney* should have.

The agreements in the present cases obviously

do not retain the allegedly intoxicated persons within the meaning of the dramshop act. Liability has been fixed. If *Putney* is deemed to be retroactive, plaintiffs' actions must be dismissed. [418 Mich 360.]

We proceeded to give our decision in *Putney* limited retroactive effect, not because of the provisions and policies of the dramshop act, but because of the nature of our appellate system and its effect on prior dramshop litigation strategy.

### IV. DISCUSSION

In the case sub judice, the Court of Appeals reversed the trial court's judgment notwithstanding the verdict and ordered reinstatement of the jury's verdict. *Riley v Richards,* 144 Mich App 584; 376 NW2d 162 (1985). The majority concluded that the stipulation did not exclude Richards as an interested party and, thus, did not bar the dramshop action against Palmiter. The reasoning of this conclusion was formed by three premises.

First, the Court reasoned that our caution in *Tebo* was authority for proceeding cautiously in this case.

We prefer the cautious approach as well and therefore decline to apply the rule of *Putney* to an agreement between plaintiff and the alleged intoxicated defendant which limited damages but left the defendant an interested party at trial. [144 Mich App 589-590.]

Second, the Court believed that Richards "was far more than a nominal party and in fact diligently defended against the lawsuit." *Id.,* 591. The Court distinguished Richards from the plaintiffs in *Putney,* and *Burns v Carver* (companion case to

*Tebo*) in that Richards did not receive a sum certain and continued to contest damages.

> The stipulation conceded negligence and intoxication but not damages. Richards's insurer became the real party in interest—the entire policy limits were at risk—as the potential for recovery of damages ranged from $0 to $20,000. Liability hinged upon plaintiff's ability to prove serious impairment. The stipulation resolved evidentiary issues, but did not terminate the litigation. The alleged intoxicated person remained in the case and his insurer's attorney presented a vigorous and viable defense as to the nature of plaintiff's injuries. [144 Mich App 590.]

This "continued involvement" was considered to satisfy the name and retain provision.

Finally, the Court rejected Palmiter's argument that he had been deprived of defenses guaranteed by the dramshop act when Richards stipulated to intoxication and negligence. The provision of MCL 436.22(5); MSA 18.993(5), which states that "all factual defenses open to the alleged intoxicated person . . . shall be open and available to the principal and surety" was reasoned not to apply to the circumstances of this case.

> We do not interpret "factual defenses" to mean fraudulent defenses or non-existent defenses. Since Richards knew that he was intoxicated when he collided with plaintiff's automobile, a belief borne out by a blood alcohol content of .20%, he did not truly have a non-intoxication defense available to him and that defense was thus not available to defendant Palmiter. There is a difference between an intoxicated person and an alleged intoxicated person. The tavern is not statutorily enabled to posture sobriety if "the suit don't fit." [144 Mich App 591.]

Thus, the majority reversed the judgment notwithstanding the verdict and remanded the case for reinstatement of the verdict.

Judge Meyer WARSHAWSKY dissented:

> Whatever appellation is given to a settlement agreement, in this case "stipulation," the language and intent of both the Legislature and Supreme Court is clear. That intent is to bar an action by a plaintiff in a dramshop action if the plaintiff settles with the minor or alleged intoxicated person prior to the conclusion of the litigation by trial or settlement.
>
> Such is the case before us. The plaintiff settled with the alleged intoxicated person and continued her suit against the tavern. The alleged intoxicated person was maintained in the suit only as a nominal party. This is contrary to the objective of the statute and the controlling case law.
>
> A very real effect of such a stipulation or settlement is demonstrated in this case, to wit: the factual defenses of the defendant Richards including negligence, causation, and the right to keep out the results of the Breathalyzer test, were open and available to defendant Palmiter under the dramshop act, but all were waived by Richards. The direct effect of the stipulation or settlement was to strip defendant Palmiter of its defenses. [144 Mich App 594.]

Judge WARSHAWSKY believed that the majority's exception would dilute and deflect the direction and stability which *Putney* had provided for dramshop litigation.

For the following reasons, we conclude that the Court of Appeals was in error in its attempt to limit the holding of *Putney.*

Our caution in *Tebo* was not premised on a consideration of a particular settlement. Instead, it was an approach which we considered to be the most just in light of our denial of leave in *Buxton*

*v Alexander,* 69 Mich App 507; 245 NW2d 111 (1976), lv den 399 Mich 827 (1977), and subsequent decision in *Putney. Tebo* provides no authority for the Court of Appeals "cautious approach" in this case.

The Court of Appeals conclusion that Richards was more than a nominal party, by virtue of his continued defense as to the nature of damages, misconceives the policies of the dramshop act and our decision in *Putney.* As we stated in *Putney,* 188, a defendant must have a "direct financial stake"; it is not enough that his insurance company becomes the real party in interest to dispute only the issue of damages. Admissions of negligence, causation, and intoxication in return for a limitation of liability were the primary concerns we expressed in *Putney.* Appellee argues that we should distinguish the case sub judice from those in which payments were made in exchange for covenants not to sue. Yet, here there was a payment; Richards' payment was to agree to liability of up to $20,000 if damages were proved in return for no further personal liability. Although the settlement in this case and the participation of the defendant differ from the defendant in *Putney,* we believe the same dangers of collusion and fraud are present. There can be no degrees of compliance with the "name and retain" provision. As we held in *Putney,* the statute does not allow such an approach, and, according to our reasoning in *Putney,* a settlement *of any kind* violates the dramshop provision. In the case sub judice, the defendant's liability was limited to the amount of his insurance policy, and, once limited, he ceased to dispute negligence or intoxication.[3]

[3] The following are excerpts from James Newell Richards' deposition of April 20, 1982:

The plaintiff implies that Richards was not getting anything of value because he was subject to indemnification or contribution. If, indeed, Richards had nothing to gain in limiting liability, as the contribution argument suggests, then what possible reason was there in accepting a limitation on his direct liability to the plaintiff in return for his obviously helpful concessions and in having the agreement placed on the record?

For whatever reason, it is inescapable that Richards thought he had less vulnerability by limiting direct liability in return for concessions that clearly helped plaintiff in her efforts to obtain a more favorable judgment, than for any potential liability under contribution.[4]

We need not determine whether this was collusion in fact or "retention" in part; the Legislature's will supersedes such an inquiry by requiring

> *Q.* When you were driving from the bar to the scene of the accident, do you recall feeling the effects of alcohol?
> *A.* I don't recall.
>
>            *     *     *
>
> *Q.* Do you recall feeling the effects of alcohol to any degree when the accident happened?
> *A.* I don't recall it, no.
> *Q.* You don't recall it. Is that because it was so long ago?
> *A.* I would say "yes."
> *Q.* When you were in the bar, do you recall feeling the effects of alcohol?
> *A.* I don't recall that, no.
> *Q.* Do you recall having any difficulty walking?
> *A.* No.

[4] *O'Dowd v General Motors Corp,* 419 Mich 597; 358 NW2d 553 (1984), suggests that contribution may be possible in dramshop actions, contrary to prior Court of Appeals decisions. See, e.g., *Putney v Gibson,* 94 Mich App 466; 289 NW2d 837 (1979). However, we need not address that question in this case.

We note, however, that contribution is, in fact, a separate suit; it is distinct from the cause of action which gives rise to the contribution suit. A separate suit for contribution, therefore, is only a possibility and, in the case of an alleged intoxicated person with something less than a deep pocket, an even more remote possibility.

that the defendant be "retained in the action until the litigation is concluded by trial or settlement," and, as we have previously stated, "retained" means being a real party in interest in the full sense of those words. We find this agreement between the plaintiffs and Richards to violate the act.

We agree with the Court of Appeals that there is a difference between an intoxicated person and an allegedly intoxicated person. However, Richards did not "know" he was intoxicated until after he was told that his liability would be limited to his insurance coverage.[5] Although the Court of Appeals concluded that Richards "did not truly have a nonintoxication defense available to him," we note that the trial court concluded:

> Richards, when he agreed not to object to the introduction of the .20 breathalizer [sic] result was providing the plaintiff with a very valuable "asset" in this case. *Without such stipulation it would, in this court's opinion, have been virtually impossible for plaintiff to prove her case.* The evidence of Richards' visible intoxication in the bar came almost exclusively from the testimony of Dr. Spitz and was based on the breathalizer result. *If such result had not been admitted into evidence this court doubts very much that plaintiff would have been able to introduce sufficient evidence to show that Richards was visibly intoxicated when he was furnished alcohol in the bar.* [Opinion of Patrick Duggan, February 9, 1984. Emphasis in original.]

It may be that the jury would have been convinced of Richards' intoxication solely by the testimony of the officers who administered field sobriety tests. Yet the admissions and waivers had, as Judge WARSHAWSKY stated, the effect of stripping Palmiter of its defenses.

[5] See, n 3 *supra,* deposition of defendant Richards.

We do not wish to discourage admissions of negligence and intoxication. However, the Legislature, whether for concerns of judicial economy or "deep pocket strategies," mandates that such admissions cannot be made in conjunction with a settlement between a plaintiff and an allegedly intoxicated person only. We do not forbid allegedly intoxicated persons from admitting negligence or intoxication; we only forbid doing so after a settlement of any kind.

Our holding, which disallows settlements in these cases, appears antithetical to our general policy of encouraging parties to settle their disputes before or during litigation. However, the particular dangers of reaching beyond the allegedly intoxicated person to the owner of a tavern were considered, by the Legislature, to admit no exceptions to being "named and retained" in the action. We do not think it is for us to measure degrees of participation or the practical consequences of particular admissions or waivers.

Because we find this agreement to be in violation of the dramshop act, we need not address the issue whether a guaranteed verdict, or its exclusion from a jury, is contrary to public policy.

### V. CONCLUSION

An attempt to limit the provisions of the Michigan dramshop act, MCL 436.22(5); MSA 18.993(5), and our holding in *Putney* would seriously diminish the legislative intent to decrease the possibility of fraud or collusion by prohibiting agreements between plaintiffs and allegedly intoxicated persons before the conclusion of litigation by trial or settlement. The agreement in this case, which

limited liability to the maximum of the allegedly intoxicated person's insurance coverage, in return for admissions of intoxication and negligence as well as waivers to admission of evidence, is a violation of the "name and retain" provision, regardless of the fact that the allegedly intoxicated person continued to defend the issue of damages. We reverse the judgment of the Court of Appeals and reinstate the trial court's judgment notwithstanding the verdict.

RILEY, C.J., and LEVIN, CAVANAGH, BOYLE, and GRIFFIN, JJ., concurred with BRICKLEY, J.

ARCHER, J. (*dissenting*). I respectfully dissent.

The allegedly intoxicated person was "a named defendant" and was "retained in the action" as required by the dramshop act. MCL 436.22(5); MSA 18.993(5).

At trial, defendant Richards admitted intoxication and negligence, but vigorously defended the damages issue on the ground that plaintiff had not sustained serious impairment of body function as a result of the accident. Palmiter defended on the ground that the evidence was insufficient to establish that one of its employees or agents had served Richards alcohol while he was visibly intoxicated. 144 Mich App 587-588.

The majority concedes that the Legislature did not define the parameters of "named" or "retained" as those words are used in the statute. The majority then states that "it is the duty of this Court to provide definitional guidance within the boundaries of legislative intent." *Ante,* p 204. This definitional guidance was provided in *Putney v Haskins,* 414 Mich 181; 324 NW2d 729, reh den 414 Mich 1111 (1982); *Tebo v Havlik,* 418 Mich

350; 343 NW2d 181 (1984), reh den 419 Mich 1201 (1984).[1]

Unlike the facts in *Putney, supra,* Richards was "retained in the action until the litigation [was] concluded by trial . . . ." Moreover, there was no settlement, in that plaintiff was not guaranteed a sum certain in money. Although in a pure technical sense Richards' liability was fixed and limited to a maximum of $20,000, he nevertheless had "a direct financial stake." Richards admitted liability, but defended on the issue of no serious bodily impairment which if successful would have resulted in a verdict of no cause of action, and would have entitled plaintiff to zero dollars. There was no collusion or fraud. Richards presented a legitimate and rigorous defense.

The trial court opined that without the stipulation between Richards and plaintiff, it would have been virtually impossible for plaintiff to prove her case. The trial court stated that the "evidence of Richards' visible intoxication in the bar came almost exclusively from the testimony of Dr. Spitz and was based on the breathalizer [sic] result." (See *ante,* p 213.) The trial court apparently overlooked the testimony of Kenneth Gazarek, a police officer for the City of Lincoln Park, who observed Richards at the time the accident occurred. Officer Gazarek testified in pertinent part as follows:

> *Q.* Can you tell us what your investigation revealed as to the accident?
> *A.* That Driver #2, being Mrs. Riley, was stopped at the red light on northbound Dix and Arlington and that Driver #1, Mr. Richards, had struck her from behind.
> *Q.* Were observations made with regard to Mr. Richards' condition?

---

[1] See n 1 of the majority opinion, *ante,* p 202.

*A.* Yes.

*Q.* Did you administer a sobriety test at that time?

*A.* I believe Officer Fultz talked to him mostly. We did, yes, ask him to say his alphabet.

*Q.* Can you tell us what a field sobriety test is, what kind of a test you give?

*A.* Most of the time you just basically ask them to say the alphabet, simple tasks and to walk a straight line, heel to toe, and simple things like that, coordination tests.

*Q.* Did he tell you how much he had had to drink that night?

*A.* It's on the alcohol influence report.

*Q.* Can you tell us what information he gave you from that report?

*A.* At that time, he stated: Four beers.

*Q.* Did you make any observations as to his ability to walk?

*A.* Can I refresh my . . .

*Q.* (Interjecting) Yes, absolutely.

*A.* I didn't make out this influence report, but it says: Staggering, as far as his walk.

*Q.* Did you make any observation as to the condition of his eyes, what his eyes looked like?

*A.* Watery, bloodshot.

*Q.* Did you make any observations as to whether or not he smelled of alcohol?

*A.* Yes, he smelled of alcohol. We have that in here also.

*Q.* Did you make any observations as to the color of his face, whether it was flushed or not?

*A.* Flushed, I believe—it has flushed.

*Q.* Was he able to walk a straight line?

*A.* Not that I can remember.

*Q.* Was he having difficulty standing?

*A.* I can't remember exactly, just, on here it says: Staggering. Okay. Had trouble standing, correct, could not walk a straight line, could not say the alphabet.

*Q.* Was he swaying as well?
*A.* Yes, staggering and swaying.

On the basis of Officer Gazarek's testimony, Richards was visibly intoxicated at the time the accident occurred. At the time of trial, it was undisputed that the only place that Richards consumed alcohol on the night of the collision was at Palmiter.

The majority concedes that the Legislature did not define the parameters of the "name and retain" provision of the dramshop act, MCL 436.22(5); MSA 18.993(5). On the basis of this Court's holding in *Putney, supra,* the majority concludes that there was a violation of the "name and retain" provision. I believe that *Putney* was either wrongly decided, or incorrectly applied to the facts of this case.

I would affirm the judgment of the Court of Appeals on this issue. The majority not having reached the remaining issues, it is unnecessary to address them.